**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| De Etta Diane Conway,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-20-02199-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff De Etta Diane Conway's appeal of her denial of social security disability benefits. The appeal is fully briefed, (Docs. 19, 20, 21), and the Court now rules.

**I.    BACKGROUND**

**A. Factual Overview**

Plaintiff was born in December 1955 and has a college education. (AR 180, 205). She has past relevant work experience as a nurse consultant and home health nurse. (AR 24). Plaintiff filed an application for social security benefits on January 20, 2017, alleging disability beginning on May 18, 2016. (AR 180).

The Commissioner denied Plaintiff's application and on reconsideration. (AR 113–16, 122–26). In December 2019, an ALJ issued an unfavorable decision, finding that Plaintiff was not under a disability within the meaning of the Social Security Act. (AR 12–24).

/ / /

### B. The SSA's Five-Step Evaluation Process

To qualify for social security benefits, a claimant must show she "is under a disability." 42 U.S.C. § 423(a)(1)(E). A claimant is disabled if she suffers from a medically determinable physical or mental impairment that prevents her from engaging "in any substantial gainful activity." *Id.* § 423(d)(1)–(2). The SSA has created a five-step process for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1). Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At the first step, the ALJ determines whether the claimant is "doing substantial gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial gainful activity is work activity that is both "substantial," involving "significant physical or mental activities," and "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

At the second step, the ALJ considers the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have "a severe medically determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe impairment" is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b).

At the third step, the ALJ determines whether the claimant's impairment or combination of impairments "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, before proceeding to step four, the ALJ must assess the claimant's "residual functional capacity" (RFC). *Id.* § 404.1520(a)(4). The RFC represents the most a claimant "can still do despite [her] limitations." *Id.* § 404.1545(a)(1). In assessing the claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.*

At the fourth step, the ALJ uses the RFC to determine whether the claimant can

still perform her "past relevant work." *Id.* § 404.1520(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform her past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At the fifth and final step, the ALJ determines whether—considering the claimant's RFC, age, education, and work experience—she "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

### C. The ALJ's Application of the Factors

At the first step, the ALJ concluded that Plaintiff did not engage in substantial gainful activity during the relevant period. (AR 17). At the second step, the ALJ determined that Plaintiff had severe impairments of right ankle/foot abnormalities, status post bilateral breast cancer and mastectomies, right shoulder abnormality, and obesity. (AR 17).

At the third step, the ALJ determined that Plaintiff's impairments did not meet the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 18). After evaluating Plaintiff's RFC, the ALJ concluded that Plaintiff could perform sedentary work as defined in 20 C.F.R. 404.1567(b). (AR 19–23). At the fourth step, the ALJ found that Plaintiff could return to her past work as a nurse consultant and was not disabled. (AR 23–24).

## II. LEGAL STANDARD

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial evidence means . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). On review, the Court "must consider the entire record as a whole,

weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III. DISCUSSION

Plaintiff raises three potential errors in the ALJ's analysis: (1) the ALJ improperly weighed the medical evidence when determining Plaintiff's residual functional capacity; (2) the ALJ failed to provide clear and convincing reasons for discrediting the Plaintiff's testimony; and (3) the ALJ erred by finding Plaintiff's previous position as a nurse consultant was past relevant work. The Court addresses each in turn.

### A. Plaintiff's Challenge to the ALJ's RFC Assessment

Plaintiff first argues that the ALJ's RFC finding was not supported by substantial evidence because the ALJ relied on a "nonexamining physician" opinion which was "internally inconsistent" and "failed to incorporate limitations related to CRPS [complex regional pain syndrome]." (Doc. 19 at 11). Further, Plaintiff argues that the ALJ improperly rejected Plaintiff's CRPS diagnosis. (Doc. 19 at 11).

An RFC assessment is an "administrative finding" that is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(2). The RFC is "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). In formulating an RFC, the ALJ weighs medical and other source opinions, including lay opinions, as well as the claimant's credibility. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). The RFC assessment must be supported by substantial evidence and

- 4 -

"must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting SSR 96-8p).

Plaintiff argues that the ALJ erred in assigning great weight to Dr. Sampat because Dr. Sampat's opinion about Plaintiff being able to stand and perform activities were inconsistent with each other. (Doc. 19 at 12). Additionally, the ALJ relied on Dr. Sampat's opinion because his opinion was made prior to Plaintiff's CRPS diagnosis. (Doc. 19 at 12).

The ALJ assigned great weight to Dr. Sampat's opinion:

> As for the opinion evidence, I give great weight to the physical functioning assessment of the Disability Determination Services (DDS) medical consultants, Yosef Schwartz, M.D. and Pravin G. Sampat, M.D., who opined the claimant has abilities consistent with a light exertion level with restrictions on postural activities and pushing and/or pulling with the right lower extremity (Exs. 2A, 4A). The doctor at the reconsideration level, Dr. Sampat, gave her postural and overhead reaching activities consistent with those found in this decision. The doctor at the initial level, Dr. Schwartz, further restricted her postural activities and exposure to environmental factors, but did not limit her overhead reaching. The doctor at the reconsideration had more of the available evidence, which included her further recovery (See Ex. 19F/9). Accordingly, greater weight is given to Dr. Sampat's opinion. The DDS opinion also is persuasive as they considered the claimant's symptoms and they are familiar with the Social Security Act and related rules and regulations. Moreover, their opinions are consistent with the objective medical evidence. She underwent Achilles tendon surgery and had complications with surgery recovery and a shoulder injury, but she improved with physical therapy and therapeutic injection. She initially was in and out of a boot, a MRI showed a partial Achilles tendon tear, and she still exhibited an antalgic gait, varied ankle range of motion, and some reduced strength at 4-5/5. However, she also has been able to ambulate without an assistive device and she demonstrated no ankle instability and full shoulder range of motion and no shoulder muscle weakness. (Exs. 3F/15, 23; 5F/4; 7F/6; 8F/5, 13; 10F/9, 13, 18; 12F/4, 6; 13F/5; 19F/9; 21F/6; 28F/11, 13, 14, 21). In light of such evidence though, additional consideration is given to the claimant's symptoms in further restricting her to a sedentary exertion level. Otherwise, great weight is given to the opinions of the DDS medical consultants.

(AR 22–23). Yet Plaintiff objects to this finding because Dr. Sampat opined that Plaintiff could "stand and/or walk for a total of four hours out of an eight-hour workday, but was able to perform activities of balancing, stooping, and crouching frequently throughout a workday." (Doc. 19 at 12). Plaintiff argues that this inconsistency "constitutes harmful error." (Doc. 19 at 12).

The ALJ did not err in relying on Dr. Sampat's opinion or in finding Plaintiff's RFC. The agency defines "occasionally" as occurring from very little up to one-third of the time and "frequent" as occurring from one-third to two-thirds of the time. Social Security Ruling 83-10. But the agency also defines "balancing, stooping, and crouching" as a "nonexertional impairment." Social Security Ruling 83-10. That is, "[a]ny impairment which does not directly affect the ability to sit, stand, walk, lift, carry, push, or pull." Social Security Ruling 83-10. Thus, Dr. Sampat's opinion and the ALJ's finding on Plaintiff's ability to balance, stoop, and crouch does not contradict their views on Plaintiff's ability to walk.

Even if Plaintiff could establish error, she has not shown that it was harmful. An error is harmless if there remains substantial evidence supporting the ALJ's decision, and the error does not affect the ultimate nondisability determination. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). The ALJ ultimately determined that Plaintiff could return to her past work as a nurse consultant. And according to vocational expert testimony, that occupation has "no climbing, no balancing, stooping, kneeling, crouching, crawling, occasionally reaching, occasional handling, occasional fingering, no feeling, frequent talking, frequent hearing." (AR 69). Therefore, any inconsistency from Dr. Sampat's opinion about Plaintiff's ability to stand or balance is harmless.

Plaintiff next contends that the "ALJ's reliance on Dr. Sampat's opinion when forming the assigned RFC contains harmful error as it was made prior to her CRPS diagnosis." (Doc. 19 at 12). With regards to the CRPS diagnosis, the ALJ found:

> There is a diagnosis of complex regional pain syndrome (CRPS), based on the claimant's complaints of hypersensitivity (Ex. 28F/15). However, I do not find any testing that confirms this and this reference is the only mention

of this diagnosis. The claimant testified at 2:00:24 that this hypersensitivity began in June 2017, but there appears to be no mention of it in the record. That testimony is also inconsistent with Exhibit 19F/9, where in September 2017, she said her ankle pain was mild and it felt better. I do not believe there is sufficient evidence for the CRPS diagnosis, and there is no treatment for it afterward. The claimant says this is because of loss of insurance. Nevertheless, I account for her alleged symptoms by further reducing her to a sedentary exertional level.

(AR 18). The ALJ found Dr. Sampat's opinion consistent with the objective medical evidence and afforded it great weight. (AR 23). And then considering additional evidence after that opinion, the ALJ further restricted Plaintiff's RFC. (AR 23). But an ALJ does not need to agree with everything a medical source says in determining weight of the testimony. *Magdalene v. Comm'r of SSA*, No. CV-19-04772-PHX-JJT, 2020 U.S. Dist. LEXIS 179533, at *8 (D. Ariz. Sep. 29, 2020); *Magallanes v. Bowen*, 881 F.3d 747, 753 (9th Cir. 1989). Additionally, it can hardly be said that the ALJ committed harmful error when relying on Dr. Sampat's pre-CRPS opinion when the ALJ does not believe that Plaintiff's CRPS was a non-severe impairment. (AR 18)

Plaintiff argues that the ALJ's analysis did not follow the required test for CRPS and failed to give legitimate reasons supported by substantial evidence. (Doc. 19 at 15–16). Specifically, the guidelines instruct the ALJ to resolve conflicting medical evidence by re-contacting treating sources rather than simply concluding that Plaintiff was exaggerating her symptoms. (Doc. 19 at 17). But Plaintiff does not identify any ambiguities in the evidence or explain why re-contacting the treating physicians was necessary to resolve such ambiguities. Plaintiff bears the burden of proving that she is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The ALJ, with support in the record, found the evidence adequate to decide Plaintiff's disability. Accordingly, the ALJ did not have a duty to re-contact Plaintiff's physicians. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Plaintiff also argues that the ALJ did not cite the CRPS diagnostic process or follow it. (Doc. 19 at 13). While the ALJ did not cite the Social Security Ruling in his

decision, the ALJ followed the required sequential evaluation process in evaluating her disability claim. The ALJ considered Plaintiff's testimony, medical records, diagnosis, and treatment records to determine Plaintiff's diagnosis of CRPS to be a non-severe impairment. (AR 18). The ALJ did not err in doing so, and any error would be harmless considering her past relevant work as a nurse consultant. (AR 69).

### B. Plaintiff's Symptom Testimony

Plaintiff also argues that the ALJ erred by failing to provide clear and convincing reasons for discrediting the Plaintiff's testimony. (Doc. 19 at 17).

At her hearing, Plaintiff testified that her foot throbs and causes pain that makes activities of daily living difficulty. (AR 54). She further stated that the pain affects her sleeping and her ability to concentrate. (AR 55). Additionally, Plaintiff testified that she walks with a walking stick, walker, or boot. (AR 58).

The Ninth Circuit has established a two-step analysis for an ALJ to determine whether to credit a claimant's subjective symptom testimony. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison*, 759 F.3d at 1014–15). If the claimant presents such evidence, the ALJ then evaluates the claimant's subjective complaints. *See id.* "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Instead, an ALJ must provide "specific, clear, and convincing reasons" for doing so. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

At the first step, the ALJ determined that Plaintiff's impairments "could reasonably be expected to cause some of the alleged symptoms." (AR 20). At the second step, however, the ALJ concluded that Plaintiff's "statements concerning the intensity,

persistence and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record." (AR 20).

Plaintiff argues that ALJ applied an incorrect legal standard because "severity of symptoms cannot be discredited *solely*" by objective medial evidence. (Doc. 19 at 19). Plaintiff also argues that the ALJ's analysis fails to clearly specify which parts of her testimony was unsupported by objective findings. (Doc. 19 at 19). Next, Plaintiff argues that the ALJ's analysis of "Plaintiff's allegations of symptom severity are tainted" because the ALJ dismissed Plaintiff's CRPS diagnosis. (Doc. 19 at 20). Finally, Plaintiff argues that the ALJ's statement regarding Plaintiff's treatment history

The Court does not read the ALJ's opinion to mean that Plaintiff's testimony was rejected solely because it contradicted the objective medical evidence. Rather, the ALJ's statement merely notes that the record contains conflicting evidence as to the severity of Plaintiff's symptoms. And although Plaintiff is not required to provide medical evidence of the severity of her symptoms, *see Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (explaining "an adjudicator may not reject a Plaintiff's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain"), the ALJ may properly consider objective medical evidence to assess Plaintiff's credibility regarding the intensity and persistence of her symptoms, *see Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (pointing to medical evidence as a relevant factor in determining severity of Plaintiff's pain and disabling effects). The Court also disagrees with Plaintiff that the ALJ failed to cite to specific records. (AR 20, citing records). The ALJ looked at Plaintiff's intensity and frequency of symptoms, noting that they were inconsistent. (AR 21).

Further, these records and the ALJ's analysis allow the Court to clearly discern why the ALJ concluded that Plaintiff's allegations were inconsistent with her documented improvement. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (reiterating that ALJs may explain their decisions with unideal clarity so long as their reasoning is reasonably discernible).

- 9 -

1	Turning to Plaintiff's second argument regarding the ALJ's dismissal of her CRPS diagnosis, the Court does not find any error here. (Doc. 19 at 20). The ALJ accounted for Plaintiff's alleged CRPS symptoms by further reducing her to a sedentary exertional level. (AR 18). While transient findings are characteristics of CRPS, (Doc. 19 at 20), the ALJ reasonably relied on reports that were inconsistent with Plaintiff's testimony.

Finally, Plaintiff argues that the ALJ improperly found that Plaintiff's treatment history suggested that impairments were not as bad as Plaintiff claimed. (Doc. 19 at 21). Plaintiff claims that "several recommended treatments" were not feasible. (Doc. 19 at 21).

The ALJ looked at Plaintiff's treatment plan which included physical therapy and concluded that it was inconsistent with allegations of disability. (AR 20-21). The ALJ also noted that "naproxen and steroid injection improved all her symptoms." (AR 21). The ALJ reasonably relied on evidence of this conservative treatment to find Plaintiff's symptom allegations unpersuasive. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008).

### C. Past Relevant Work

Plaintiff finally argues that the ALJ erred by finding Plaintiff's previous position as a nurse consultant was past relevant work. (Doc. 19 at 22). At step four, the Plaintiff bears the burden of proving that she cannot perform her past relevant work. *See Stacy v. Colvin*, 825 F.3d 563, 569 (9th Cir. 2016). Past relevant work is work "done within the past 15 years, [that] lasted long enough for you to learn to do it and was substantial gainful activity." 20 C.F.R. § 404.1565(a).

"Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto*, 249 F.3d at 845. "To determine whether a claimant has the [RFC] to perform [her] past relevant work, the [ALJ] must ascertain the demands of the claimant's former work and then compare the demands with [her] present capacity." *Villa v. Heckler*, 797 F.2d 794, 797–98 (9th Cir. 1986); *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "This

requires specific findings as to the claimant's [RFC], the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." *Pinto*, 249 F.3d at 845.

The ALJ found that Plaintiff retained the RFC to perform her past relevant work as a nurse consultant. The ALJ found:

> The claimant indicated that she performed the occupation of Nurse Consultant from August 2012 until December 2013 (Exs. 8D, 3E). Therefore, she performed this occupation within fifteen years of the date of adjudication. Further, the claimant performed the occupation of Nurse Consultant long enough to learn and provide average performance. The vocational expert testified that the occupation of Nurse Consultant has a SVP of 7. Occupations with a SVP of 7 take over two years up to and including four years to learn and provide average performance. As the claimant has a nursing associates degree and she performed this occupation for approximately 1 year and 4 months, she performed it long enough to learn and provide average performance. Finally, the claimant's earnings records show that she performed the occupation above the level of substantial gainful activity (Ex. 8D). Accordingly, I find the claimant's work as Nurse Consultant, to be past relevant work. In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant is able to perform it as actually and generally performed. At the hearing, I asked the vocational expert whether a hypothetical individual with the claimant's age, education, work experience, and residual functional capacity could perform this job. The vocational expert responded in the affirmative (Hearing Testimony). I find that the vocational expert's testimony is consistent with the DOT (SSR 00-4p), and that the claimant's residual functional capacity would permit performance of her past relevant work as a Nurse Consultant.

(AR 24).

Plaintiff argues that she did not have past relevant work as a nurse consultant because she performed the job for "approximately 16 months total" and was "wildly unsuccessful" at it. (Doc. 19 at 22). Plaintiff argues that although her "position was designed to be performed from home," she was never able to do so. (Doc. 19 at 22). Additionally, Plaintiff claims that she was assigned to different units which prevented her from performing her job long enough to acquire the requisite specific vocational preparation level. (Doc. 19 at 23).

After comparing Plaintiff's RFC with the physical and mental demands of this position, the ALJ found that Plaintiff could work the nurse consultant position as it is generally performed. (AR 24). The Court finds that there is substantial evidence to support the ALJ's finding that Plaintiff's past relevant work includes the nurse consultant position. Plaintiff performed this occupation for over a year and provided average performance. (AR 24). There is no evidence, aside from Plaintiff's testimony, that she was "wildly unsuccessful" at her job. Additionally, the vocational expert testified that she could perform the functions of a nurse consultant. (AR 68). Accordingly, substantial evidence supports the ALJ's determination that Plaintiff could perform her past relevant work.

**IV.  REMEDY**

Plaintiff asks the Court to credit certain evidence as true and direct a finding of disability. The Court declines to do so because the Court is affirming the ALJ's decision.

**V.  CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that the ALJ decision is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

Dated this 21st day of April, 2022.

James A. Teilborg
Senior United States District Judge